## JOHN F. HAWKS *v.* J. F. AND T. R. SAWYER, AND THOMAS WILLIAMS, *Trustee.*

### *Trustee Process. Mortgage.*

Where the commissioner found that the amount of a decree in a foreclosure suit was no more than the true value of the property, (which consisted mainly of a factory and machinery therein and a factory boarding house,) at the expiration of the decree, and that it was so regarded by the plaintiff in this suit, who was made a party to the foreclosure suit, and by the other parties to the foreclosure suit, but in the hands of a dealer in machinery or a practical manufacturer, it

would have been worth more than the amount of the decree, and that the trustee was a farmer, and the property in his hands was available to him only by selling it, in doing which he exercised due diligence and good faith, and received for it less than the amount of the decree, it was *held*, that the amount of the decree was the full market value of the property and all that the trustee should be charged with therefor.

TRUSTEE PROCESS, which was referred to a commissioner to take the disclosure of the trustee and other evidence and report the facts as provided by law. The commissioner made his report, to which exceptions were filed by the plaintiff.

The court, at the December Term, 1863, BARRETT, J., presiding, *pro forma* rendered judgment on the report, that the trustee was not chargeable, and that he be discharged with his costs,—to which the plaintiff excepted.

The commissioner found the following facts :    The writ bears date the 4th of October, 1861, and was served on the trustee on the 9th of October, 1861, but it does not appear at what time in the day. The defendants found themselves in failing circumstances on the 28th day of May, 1861, and on that day executed to Thomas Williams and Albert F. Baldwin, jointly, a note and mortgage of $3000. of two certain pieces of land in Chester,—the first piece being the factory lot including all the buildings thereon, together with the water privilege ; all the machinery, tools and apparatus therein for running said factory ; the second piece being the factory boarding house and land attached thereto,—to indemnify said Williams and Baldwin for signing a note with the defendants to the bank of Bellows Falls, for the sum of $2500. as sureties, on the 8th day of July, 1857, with the promise and agreement on the part of the defendants, that such mortgage should be given, if any difficulty in the financial affairs of the defendants should happen, and to further secure a note of $194. due to Betsey Williams, wife of Thomas Williams, and signed by T. & J. F. Sawyer & Co., and also to secure one other note due to Thomas Williams, and signed by said T. & J. F. Sawyer & Co., for the sum of $85.62, (the defendants J. F. & T. R. Sawyer being members of the firm of T. & J. F. Sawyer & Co., which was composed of Thomas and J. F. and T. R. Sawyer,) and further to indemnify and secure the said Williams and Baldwin for all costs and expense which might thereafterwards arise or be paid by them in

consequence of their becoming security for the said J. F. & T. R. Sawyer.

On the morning of the day on which the trustee writ of the plaintiff was served on the trustee Thomas Williams, said Thomas Williams after having consulted and advised with his joint mortgagee Albert F. Baldwin, took possession of the said mortgaged property in the name and for the benefit of himself and said Williams and Baldwin as joint mortgagees, and the trustee Thomas Williams never had in his hands or possession any other property than what he then took possession of under said mortgage as joint mortgagee with said Albert F. Baldwin. The keys of said factory were delivered to said Thomas Williams, (who held them until the property was sold to Putnam,) by one Thomas Sawyer, father of the defendants, with whom the defendants had left the keys of the factory when they left the country, the said Thomas Sawyer delivering the possession of said mortgaged property to the said Thomas Williams, for the benefit of the said Williams and Williams & Baldwin as joint mortgagees; and the said Williams and Williams & Baldwin thereafterwards held the possession of all the property that said Williams then took possession of (except what was attached by Fullerton & Martin on the 20th day of November, 1861,) under their joint control until they sold it to Abel Putnam, Jr., on the 12th day of January, 1863. The said Williams & Baldwin also received a paper writing from J. F. & T. R. Sawyer, dated the 15th day of October, 1861, in about a week after its date, turning out to them, Williams & Baldwin, all the cotton warps in said factory, and other property in and about the premises, consisting mainly of saws with their frames and fixtures, engine hose, regulator, segments of water wheels, tin cans, lamps, &c., all of which was attached by Fullerton & Martin. There was also some yarn waste in the factory, but it did not appear how much, one ram for forcing water into the attic, one iron vice not appraised, also six stoves, which, taken altogether, would weigh 1000 lbs., worth $10., two anvils worth $20., about 120 feet stove pipe, worth $10., about 1000 lbs. old iron and old machinery, worth $10., two clocks, worth $6, two tables of little value, one desk, worth $3., one counter, value not estimated. The desk, tables and counter were all fastened to the building. The last described personal property, which was

not attached by Fullerton & Martin is claimed by the plaintiff as not included in the mortgage. There was also in the factory the usual shafting and machinery commonly used in woolen factories.

After the said Williams and Williams & Baldwin took possession of the factory and the property therein under their mortgage and said paper writing, Fullerton & Martin commenced a suit against J. F. & T. R. Sawyer, and on the 20th day of November, 1861, attached the property so turned out to Williams & Baldwin with the above exception, as the property of J. F. & T. R. Sawyer, and recovered judgment against said J. F. & T. R. Sawyer, and sold said property on execution.

Williams & Baldwin then brought their suit against Fullerton & Martin to recover back the property so taken and sold by Fullerton & Martin and recovered judgment to the amount of $300. which was paid.

Williams & Baldwin commenced their suit to foreclose the mortgage against J. F. & T. R. Sawyer at the December Term, 1861, Windsor county. The facts in relation to this suit, and in relation to the value of the mortgaged property and other facts in the. case are sufficiently set forth in the opinion of the court.

The commissioner found the value of the .factory and the property therein not taken by Fullerton & Martin when in the hands of Williams & Baldwin to be   .     .     .     .     $2987.28

Money received of Fullerton & Martin in the said suit
    against them,    .     .     .     .·     .     .     327.46

Money received for rent on boarding house while Williams and Williams & Baldwin held it,    .     .     55.67

                                            —————

      Making the sum of    .     .     .     $3370.41
in the hands of Williams and Williams & Baldwin on the
    12th day of December, 1862. To balance which
    there was due them in equity on their mortgage the
    sum of    .     .     .     .     .     $2987.28

One year's interest on said sum,    .     .     .     .     179.23

Money, labor and materials for repairing the factory dam
    &c. while they held it, and which they were obliged
    to expend,    .     .     .     .     .     53.81

Hawks *v.* Sawyer et al. and Tr.

Money expended in prosecuting the suit against Fuller-
    ton & Martin to recover back the property taken by
    them,     .     .     .     .     .     .     77.85
Taxes on the property,     .     .     .     .     .     97.99

        Amount of claim on the property,     .     $3396.16

*C. B. Eddy* and *Converse & French*, for the plaintiff, maintained
that the mortgage to Williams & Baldwin, besides the lot and build-
ings, only covers *machinery, tools and running gear* of the factory,
*necessarily in use at the date of the mortgage, May* 28th, 1861 ; that it
only covers what was then in use and necessary for the *successful op-
eration of the factory, connected with the running gear ;* that the prop-
erty, which was attached by *Fullerton & Martin*, clearly does not
come within the terms of the mortgage, and that the trustee is liable
for the value thereof having collected the value of Fullerton & Mar-
tin. The plaintiffs in the suit of *Williams & Baldwin* v. *Fullerton &
Martin* had good right as against the defendants, as this suit was
pending at the time of the attachment by Fullerton & Martin and
Williams & Baldwin then held under their writing of October 15th.
The trustee writ was served before the property was turned out to
Williams & Baldwin under said writing or before they received the
writing of the defendants.

    The plaintiff also claims to recover for personal property not at-
tached by Fullerton & Martin, and which was sold by Williams &
Baldwin to Abel Putnam, Jr.

    The trustee had no *lien* upon the property, but it was subject
to attachment by the defendant's creditors at the time the plaintiff
attached the same in the hands of the trustee. The property was
simply left in the *care* of the defendants' father when they left the
state, and he consented that the trustee might *take possession,* and
delivered to him the keys. But *supposing* the trustee *had such lien,*
it would expire when they were fully paid their debt. We insist
that by the *foreclosure* when the title to the property became absolute
in the trustee and Baldwin, *December,* 1862, it *was worth more than
the amount of their debt.* It is well settled that in such cases the
debt is *paid. Lovell* v. *Leland,* 3 Vt. 581.

    The true rule of value must be what such property is worth in

the hands of men *dealing in or using such property*, and it would be folly to say that machinery of this kind, or a railroad *locomotive* or *cars* were to be valued by what they were worth in the hands of a *farmer*.

*L. Adams*, for the trustee.

The opinion of the court was delivered by

PIERPOINT, J. A number of questions have been raised and discussed by counsel in the argument, which under the view we have taken of the case, it is not necessary for us now to decide. Upon the facts found by the commissioner, we think it quite clear, that the trustee has no funds in his hands belonging to the principal debtors with which he can properly be made chargeable in this suit. The only important question to be considered in this connection, is as to the amount received, by Williams and Baldwin under their decree foreclosing their mortgage upon the property of the principal debtors. At the time Williams & Baldwin commenced proceedings to foreclose their mortgage, they made all subsequent mortgagees, and all attaching creditors, parties to the bill. The number of such parties was large, and the plaintiff in this suit was one of them. This gave all persons interested in the property an opportunity to come in and redeem that, if they thought it worth more than the debt due to Williams & Baldwin. It also appears that Williams & Baldwin strongly urged said parties to redeem the property, and relieve them from it, and after the decree became absolute, they made great exertions to sell the property, offering to take two hundred dollars less than the amount of their decree, but could not find a purchaser at that price, and finally sold it for $2500., nearly $500. less than the amount of the decree. This furnishes strong evidence that the property was not considered worth that amount, and the commissioner has found expressly that neither the said Williams & Baldwin, then plaintiffs in this suit, nor any of the other defendants in the bill, considered the property, which passed to the said Williams & Baldwin under their decree, to be worth any more than the amount of said decree, which was $2987.28, and the commissioner further finds the fact that that sum was the true value of the property at the expiration of the decree, in the hands of the said Williams & Baldwin. He further finds that the property in the

hands of a dealer in machinery, or a practical manufacturer, would have been worth $3500. The report shows that Williams & Baldwin were not dealers in machinery, or practical manufacturers, and the only way in which they could make this property available was by selling it. They resorted to this method, and after making extraordinary exertions, and exercising due diligence, and good faith, all they succeeded in selling it for was $2500. To charge these persons with the value of this property in the hands of a machinist, or manufacturer, who wanted such property to use, and who was in a condition to use it, would not be just. The property was old, in a dilapidated state, and was daily growing worse. These parties must sell it; that was all they could reasonably do with it, and its value for that purpose is all they should be charged with, in an accounting between them and the principal debtors. Every person of any experience knows that property of this kind, in the condition that this was, cannot ordinarily be sold for its real value. The purchaser always expects to get such property for less than what he supposes he can make it worth to him, otherwise he would not buy. There is considerable risk about it. On thorough examination it may prove to be of less value than its appearance indicates. A wide margin is usually left to cover such contingencies. So that the value of such property, in the hands of a person who wants to use it, cannot be said to be its fair market value. And in this case the fair market value of this property at the time it went into the hands of Williams & Baldwin upon the expiration of the decree, is all that they should be charged with upon this accounting. And upon a consideration of all the facts and circumstances reported by the commissioner we think the amount which he has found as its value in their hands, was certainly its full market value, and all that they should be charged with.

There is a statement in the report tending to show, that if Putnam who was acting for Williams & Baldwin in endeavoring to make a sale of the property, had acted in good faith towards them, they might have sold the property for $3000., but if they had it would have made no difference in the result in this case, as there would still have been a balance due them in the adjustment between them and the principal debtors.

8

Hawks *v.* Sawyer et al. and Tr.

Treating the said sum of $2987.28 as all that the trustee should be charged with for the property taken under the decree, and allowing the other items in the account as charged and credited by the commissioner, in regard to which there is no controversy, there is nothing in the hands of the trustee for which he should be made chargeable.

The result is the judgment of the county court discharging the trustee is affirmed.